IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MONIQUE SHAWNAE DRAGER,<br><br>Defendant. | No. CR09-4045-DEO<br><br>**REPORT AND RECOMMNEDATION<br>ON PETITION TO REVOKE<br>SUPERVISED RELEASE** |

_____

This case initially came before me on a petition (Doc. No. 641) to revoke defendant Monique Shawnae Drager's supervised release. The Honorable Donald E. O'Brien referred the petition to me for the issuance of a report and recommended disposition (Doc. No. 643). I held a hearing on December 10, 2012, and took the matter under advisement. After the hearing, United States Probation Officer Ronica Mork notified my chambers that she had just received evidence of an additional violation and that she would file a supplemental and substituted petition. I held a hearing on the supplemental and substituted petition (Doc. No. 651) on December 19, 2012.

At both hearings, Plaintiff (the Government) was represented by Assistant United States Attorney Jack Lammers. Drager appeared in person with Assistant Federal Public Defender Max Wolson. Ms. Mork was also present at both hearings and the Government offered her testimony at the second hearing. Drager offered a letter from her employer at the first hearing, and did not present any witnesses.

## *I. BACKGROUND*

On May 28, 2010, Drager was sentenced to four months of incarceration and five years of supervised release based on her plea of guilty to conspiracy to manufacture 50 grams or more of actual (pure) methamphetamine. *See* Doc. No. 374. After completing

her federal prison term, Drager began serving her term of supervised release (TSR) on September 24, 2010.

The supplemental and substituted petition to revoke Drager's TSR itemizes six categories of alleged violations arising from the following alleged facts:

Drager notified United States Probation (Probation) on June 24, 2011, that she had been arrested for shoplifting. She was arrested on June 22, 2011, for putting two bottles of lotion in her purse at Hy-Vee. She admitted the violation and offered no explanation for her actions. Her TSR was modified on July 5, 2011, to include two weekends in jail, which have been completed.

On July 6, 2012, Probation was notified that the sweat patch worn by Drager from June 18, 2012, to June 29, 2012, tested positive for amphetamine and methamphetamine. Drager admitted to using methamphetamine the last weekend in June 2012. Her TSR was modified to include four weekends in jail, which have been completed. She was also referred to substance abuse counseling, which she completed on September 26, 2012.

Drager failed to appear for required urine testing on May 16, 2011, August 1, 2011, October 27, 2011, October 28, 2011, and October 31, 2011. In addition, dilute specimens were submitted on May 5, 2011, May 17, 2011, September 7, 2011, October 4, 2011, and November 1, 2011. Due to these violations, Drager was placed on a sweat patch on November 8, 2011.

Probation was notified on November 27, 2012, that the sweat patch worn by Drager from November 1 to November 15, 2012 (the First November Patch), tested positive for amphetamine and methamphetamine. When confronted by Ms. Mork, Drager denied using methamphetamine. However, at the December 10, 2012, hearing, Drager admitted to using methamphetamine.

On December 10, 2012, Probation was notified that the sweat patch worn by Drager from November 15 to November 29, 2012 (the Second November Patch), also tested positive for methamphetamine. When Ms. Mork confronted Drager about this, she claimed it was caused by being around other people using methamphetamine on November 10 and 11. At the December 19, 2012, hearing, Drager admitted that the

Second November Patch tested positive and also to the violation of associating with persons engaged in criminal activity. However, she contended (through counsel) that the positive result from the Second November Patch is explained by the same events that caused the First November Patch to test positive. That is, she used methamphetamine and was around others who were also using on the weekend of November 10 and 11. Thus, while she admits use on those dates, she denies any subsequent use and claims that the events of those two days explain both positive results.

Ms. Mork testified about her knowledge of sweat patches. Based on her training and her prior consultations with an expert in the field, Ms. Mork explained that methamphetamine must be ingested before a patch can test positive for such use. Moreover, she stated that such use must occur no more than two to three days before the patch is applied for that patch to test positive. If a person's last use was four days or longer before the patch was applied, the patch would not test positive.[1]

On cross-examination, Ms. Mork acknowledged that testing will reveal a reduced level of a substance the further removed it is from the actual use. She further acknowledged that the results from the First November Patch showed a level of 60.0 ng/mL while the results from the Second November Patch showed a level of 38.0 ng/mL.

## II. ANALYSIS

"A district court may revoke supervised release if it 'finds by a preponderance of the evidence that the defendant violated a condition of supervised release.'" *United States v. Holt*, 664 F.3d 1147, 1149 (8th Cir. 2011) (quoting 18 U.S.C. § 3583(e)(3)). The court's finding that a defendant has violated the conditions of supervised release is reviewed for clear error, while an order of revocation based on such a finding is reviewed for abuse of discretion. *United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003).

---

[1] The Government directed the court to *United States v. Meyer*, 485 F. Supp. 2d 1001, 1008 (N.D. Iowa 2006). In that case, an expert on forensic drug testing testified that a sweat patch monitors drug use twenty-four hours per day over the period of time it is worn and will generate a positive test result if drugs are used at any point during the time it is worn.

3

Drager has admitted to all but one violation alleged in the revocation petition. Accordingly, I find by a preponderance of the evidence that Drager violated the terms and conditions of her supervised release. Having so found, 18 U.S.C. § 3583(e) requires that I consider certain specified factors set forth in 18 U.S.C. § 3553(a), in making a determination as to whether Drager's term of supervised release should be terminated, extended, modified, or revoked. Although I am not required to cite each relevant factor in § 3553(a), *see United States v. Franklin*, 397 F.3d 604, 607 (8th Cir. 2005), those factors are set forth below for the convenience of the district court in reviewing this Report and Recommendation:

> The court, in determining the particular sentence to be imposed, shall consider –
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed –
>>
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B) to afford adequate deterrence to criminal conduct;
>>>
>>> (C) to protect the public from further crimes of the defendant; and
>>>
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>>
>> . . . .
>>
>> (4) the kinds of sentence and the sentencing range established for –
>>
>> . . . .
>>
>>> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission

pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a) (as referenced in 18 U.S.C. § 3583(e)). After considering these factors, I may terminate, extend, revoke, or modify the term of supervised release as set forth in § 3583(e).

Probation recommends that Drager's term of supervised release be revoked and a sentence of five months incarceration be imposed. The Government asks that I adopt this recommendation. Drager objects and seeks a less-restrictive sanction. She introduced into evidence a letter from her employer that describes her as a valuable employee. She also notes that her two children continue to reside with her, although the oldest is now a college student. She suggests that a period of home detention and substance abuse treatment would be a more appropriate consequence for her violations, and sufficient, but not greater than necessary, to comply with the sentence's purposes. I will consider Probation's recommendation in light of the factors set forth in 18 U.S.C. § 3553(a).

A.  *Nature and circumstances of offense, and Drager's history and characteristics*

Drager's original offense was conspiracy to distribute 50 grams or more of actual (pure) methamphetamine. The nature and circumstances of the offense involved multiple co-conspirators. *See* Doc. No. 644-1 at 4-5. Drager's role in the conspiracy was purchasing pseudoephedrine. She purchased approximately 400 grams of pseudoephedrine for her husband, Bryan Drager, who manufactured the methamphetamine. *See id.* at 7. At the time of the offense, she had a criminal history category of I.

Drager has a significant problem with substance abuse. She successfully completed a residential drug abuse program during incarceration. She also completed substance abuse counseling from July 23, 2012, to September 26, 2012, after a sweat patch tested positive and she admitted using methamphetamine the last weekend in June 2012. However, the violations set forth in the petition, such as failure to comply with drug testing on 10 occasions, associating with persons engaged in criminal activity, and Drager's subsequent admission of drug use on the weekend of November 10 and 11, indicate a continued difficulty with substance abuse.

On the positive side, Drager is employed as a Registered Nurse at a nursing home and, according to Defendant's Exhibit 1, is a dependable and valued employee.

B.  *Deterrence of criminal conduct*

Any modification of supervised release imposed on Drager must "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). Although many of the violations here constitute the most serious grade of violation and the guideline range of imprisonment for these violations of supervised release is 3 to 9 months, I find that incarceration is not necessary to deter further criminal conduct by Drager.

C.  *Protection of the Public from Further Crimes*

Any modification of Drager's term of supervised release must protect the public from further crimes. 18 U.S.C. § 3553(a)(2)(C). Drager has been accused of shoplifting

while on supervised release. While a law violation is considered the most serious grade of violation, the more disturbing violation is her continued use of a controlled substance after completing two rounds of substance abuse treatment and being sanctioned to four weekends in jail for a prior violation of use of a controlled substance. Due to the nature of her employment and the fact that her two children reside with her, Drager's continued use of a controlled substance puts people at risk.

### D. *Defendant's Need for Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

Drager has maintained full-time employment since the beginning of her supervision. The letter submitted by her employer states she is dependable and has never appeared impaired or irresponsible while at the facility. The employer requested that Drager be allowed to continue working. Probation does not recommend further training, medical care, or other correctional treatment at this time.

### E. *Sentencing Considerations*

I am required to consider pertinent policy statements issued by the United States Sentencing Commission in effect at the time of Drager's sentencing. 18 U.S.C. § 3553(a)(5). I find two such policy statements to be relevant to this inquiry. The first, Classification of Violations, U.S.S.G. § 7B1.1 (Policy Statement), sets forth three grades of supervised release violations. The most serious of Drager's violations is a Grade C violation, which consists of "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision." Having so found, the court looks to the Sentencing Commission's instructions upon a finding of a Grade C violation: "Upon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision." U.S.S.G. § 7B1.3(a)(2), Revocation of Probation or Supervised Release (Policy Statement). Based on her Criminal History Category of I, Drager's recommended

7

range of imprisonment pursuant to the Sentencing Guidelines is 3 to 9 months, with a maximum statutory imprisonment of five years. *See* U.S.S.G. § 7B1.4 (Policy Statement); 18 U.S.C. § 3583(e)(3).

F.  *Sentencing Disparities*

The final consideration is whether my recommended disposition will result in "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" 18 U.S.C. § 3553(a)(6). I have no information to suggest that this is the case.

G.  *Recommendation*

The Eighth Circuit has

> required that courts consider the policy statements in Chapter 7 [of the Sentencing Guidelines] when sentencing a violator of supervised release and [has] concluded that the suggested ranges in U.S.S.G. § 7B1.4(a) are only advisory. There are "no binding guidelines addressing the sentence for a violation of a condition of supervised release, only a policy statement about a court's options in such a situation."

*United States v. White Face*, 383 F.3d 733, 738 (8th Cir. 2004) (citation omitted) (quoting *United States v. Oliver*, 931 F.2d 463, 465 (8th Cir. 1991)). Failure to provide written reasons for sentencing outside the applicable policy statement range for revocation sentences is not reversible error, although written statements of reasons are helpful for the parties, reviewing courts, and the Sentencing Commission. *Id.* at 739; *accord United States v. Jones*, 973 F.2d 605, 607-08 (8th Cir. 1992) ("Because the Chapter 7 policy statements are not binding, the court is not required to make the explicit, detailed findings required when it departs upward from a binding guideline."). "The district court is free to depart from Chapter 7's suggested sentences when, in its considered discretion, such a departure is warranted." *United States v. Carr*, 66 F.3d 981, 983 (8th Cir. 1995) (per curiam); *accord United States v. Jasper*, 338 F.3d 865, 867 (8th Cir. 2003).

8

I have given careful consideration to the factors set forth in 18 U.S.C. § 3553(a), and hereby recommend that Drager's TSR be revoked and that Drager be sentenced to time served. I further recommend that the terms of Drager's TSR be re-imposed and that they be modified to require Drager to reside in a Residential Reentry Center for a period of five months.

I find that revocation with a sentence of time served, along with the modifications described above, will further the goals of deterrence and incapacitation, reflects the seriousness of Drager's conduct, and provides just punishment for such conduct. Drager has not been forthcoming with her probation officer by denying violations and later admitting them in court. She has continued to use a controlled substance (regardless of the admitted number of occasions) after a previous modification of four weekends in jail and substance abuse treatment was imposed for such conduct. However, she has maintained steady employment and is described as a valuable employee. My recommended disposition allows her to maintain her employment while affording deterrence from future violations. I find that the sentence as described above is "sufficient, but not greater than necessary, to comply with" the sentence's purposes as set forth in § 3553(a)(2) and will not result in any sentencing disparities. *See* 18 U.S.C. § 3553(a).

### III. CONCLUSION

Based upon the foregoing analysis, IT IS RESPECTFULLY RECOMMENDED that the Government's motion to revoke Drager's supervised release be **granted**, that Drager be sentenced to time served, and that the existing terms of Drager's TSR be re-imposed and modified consistent with the above report.[2]

---

[2] Pursuant to my authority provided to me by Federal Rule of Criminal Procedure 32.1(a)(6), I released Drager after the December 10, 2012, hearing under the existing terms of her TSR and subject to an additional condition that she be prohibited from the use of alcohol and from entering bars, taverns, or other establishments whose primary source of income is derived from the sale of alcohol until Judge O'Brien issues a final ruling on this matter.

Objections[3] must be filed **by January 3, 2013**.  Responses to objections must be filed **by January 17, 2013**   However, I urge the parties to file any objections and responses as soon as possible to allow Judge O'Brien to issue a final ruling promptly.

**IT IS SO ORDERED.**

**DATED** this 20th day of December, 2012.

_____
LEONARD T. STRAND
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[3] Objections must specify the parts of the report and recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72; Fed. R. Crim. P. 59.